IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**ROSEMARIE VANDICK**,

    Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security Administration,

    Defendant.
_____

Civ. No. 3:14-cv-00269-MC

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Rosemarie Vandick brings this action for judicial review of a final decision of the Commissioner of Social Security denying her application for disability insurance benefits (DIB) under Title II of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issues before this Court are: (1) whether the Administrative Law Judge (ALJ) erred at step two of the sequential evaluation by failing to recognize plaintiff's alleged post traumatic stress disorder (PTSD) as a severe impairment; and (2) whether the ALJ erred in evaluating the evidence submitted by plaintiff, plaintiff's treating psychiatrist, Dr. Schwartz, and a lay witness. Because the ALJ did not address plaintiff's alleged PTSD and related secondary symptoms, the Commissioner's decision is REVERSED and this matter is REMANDED for further proceedings.

## **PROCEDURAL AND FACTUAL BACKGROUND**

Plaintiff applied for DIB on March 13, 2011, alleging disability since December 31, 2008. Tr. 23, 143–48, 177. This claim was denied initially and upon reconsideration. Tr. 23, 88–91, 100–102. Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ), and appeared before the Honorable John Bauer on September 13, 2012. Tr. 23, 35–61. ALJ Bauer denied plaintiff's claim by a written decision dated September 25, 2012. Tr. 23–31. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Tr. 1–3. Plaintiff now seeks judicial review.

Plaintiff, born on October 17, 1963, tr. 28, 145, graduated high school, tr. 40, attended some college courses, tr. 40, and worked most recently on a full-time basis at Wilshire Credit Corporation (Wilshire) in the collections department, tr. 204. Plaintiff was forty-five at the time of alleged disability onset, and forty-eight at the time of her hearing. *See* tr. 28, 40, 145.[1] Plaintiff alleges disability due to: PTSD; stress-induced migraines; dissociative episodes; depression with suicidal tendencies; and anxiety. *See* tr. 25, 181; Pl.'s Br. 5–7, ECF No. 12.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

---

[1] Plaintiff was a "younger person" at the time of alleged disability onset and at the time of hearing. *See* 20 C.F.R. § 404.1563(c).

2 – OPINION AND ORDER

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's RFC, age, education, and work experience. *Id.*

Plaintiff contends that the ALJ's disability decision is not supported by substantial evidence and is based on an application of incorrect legal standards. In particular, plaintiff argues that: (1) the ALJ erred at step two by failing to recognize plaintiff's alleged PTSD and related secondary symptoms; (2) the ALJ erred in evaluating plaintiff's testimony; (3) the ALJ erred in evaluating Dr. Schwartz's treatment notes; and (4) the ALJ erred in evaluating evidence submitted by lay witness, Florina Jones.

## I. Step Two

At step two, the Commissioner must determine the medical severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted); SSR 96-3P, 1996 WL 374181, at *1 (July 2, 1996). In other words, step two is a de minimis screening device used to dispose of groundless claims. *Webb*, 433 F.3d at 687 (citation omitted).

Plaintiff contends that the ALJ erred by not considering her alleged PTSD as a severe impairment under step two. *See* Pl.'s Br. 5–7, ECF No. 12. In response, defendant argues that

3 – OPINION AND ORDER

plaintiff did not demonstrate that these impairments were medically determinable, *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987), or, in the alternative, that any error committed was harmful. This Court looks to the record.

Between January 2008 and October 2011, plaintiff met with psychiatrist Larry Schwartz, M.D. more than forty times to receive treatment. *See* tr. 244–59, 320–346, 360–63, 404–409. In an initial intake on January 21, 2008, Dr. Schwartz diagnosed plaintiff with: Major Depression, recurrent, moderate to severe (provisional, rule out adjustment disorder); *rule out* PTSD; and rule out Insomnia. Tr. 246. However, during the subsequent course of treatment, Dr. Schwartz regularly recognized and treated plaintiff for PTSD. *See, e.g.*, tr. 256 (On May 20, 2008, Dr. Schwartz described plaintiff's PTSD as "chronic."); tr. 359 (On December 16, 2008, Dr. Schwartz identified plaintiff's diagnoses as "Major Depression . . . [and] PTSD."); tr. 337 (On May 19, 2010, Dr. Schwartz noted "PTSD from childhood trauma."). By July 18, 2011, plaintiff's prescribed treatment assessment and plan (A/P) focused exclusively on her PTSD. *Compare* tr. 405, *with* tr. 406–409. This treatment record, at minimum, required the ALJ to consider plaintiff's alleged PTSD as a severe impairment. The ALJ's failure to do so constitutes an error.

Plaintiff further contends that the ALJ should have addressed her secondary symptoms, including migraine headaches and suspected dissociative episodes. Pl.'s Br. 6–7, ECF No. 12.

As to plaintiff's alleged migraine headaches, the medical record reflects at least three different instances of treatment for such symptoms. *See* tr. 254 (dated April 22, 2008); tr. 272–274 (dated June 30, 2009); tr. 333 (dated February 5, 2010). Plaintiff was diagnosed with Migraine not otherwise specified (NOS), not intractable on June 30, 2009. Tr. 274. This

treatment record, particularly when supported by plaintiff's own testimony, tr. 55, and a function report submitted by plaintiff's sister, Ms. Jones, tr. 192, required ALJ consideration.

As to plaintiff's alleged dissociative episodes, the medical record appears to be less supportive. In two separate treatment notes, dated February 24, 2010 and March 24, 2010, Dr. Schwartz noted that plaintiff had a "[history of] PTSD from childhood trauma now with suggestions of [d]issociative symptoms in spectrum approaching DID." Tr. 334–35. On April 21, 2010, Dr. Schwartz indicated that plaintiff's dissociative symptoms were "less overt," but that he was "still exploring" them. Tr. 336. By September 2, 2010, plaintiff no longer exhibited "active evidence of dissociative issues." Tr. 339; *see also* tr. 340 (same); tr. 341 (same); tr. 343 (same). This Court is not aware of more recent documentation identifying dissociative symptoms.

Accordingly, the ALJ erred by not considering plaintiff's alleged PTSD as a severe impairment under step two. The effects of this error are discussed *infra* § V.

## II. Plaintiff's Credibility

Plaintiff contends that the ALJ improperly rejected her testimony. Pl.'s Br. 6–9, ECF No. 12. In response, defendant argues that the ALJ's findings are supported by substantial evidence. Def.'s Br. 4–6, ECF No. 13.

An ALJ must consider a claimant's symptom testimony, including statements regarding pain and workplace limitations. *See* 20 CFR §§ 404.1529, 416.929. "In deciding whether to accept [this testimony], an ALJ must perform two stages of analysis: the *Cotton* analysis and an analysis of the credibility of the claimant's testimony regarding the severity of her symptoms." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If a claimant meets the *Cotton* analysis[2]

---

[2] "The *Cotton* test imposes only two requirements on the claimant: (1) she must produce objective medical evidence of an impairment or impairments; and (2) she must show that the impairment or combination of impairments *could*

5 – OPINION AND ORDER

and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). This Court "may not engage in second-guessing," *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted), and "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation," *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995) (citations omitted).

The ALJ found that plaintiff was a "partially credible witness." Tr. 28. In making this determination, the ALJ relied on three bases, including: (1) inconsistency between plaintiff's testimony and the medical evidence; (2) inconsistency between plaintiff's observed behavior and the medical evidence; and (3) inconsistency between plaintiff's testimony and her daily activities. *See* tr. 26–28.

First, as to inconsistency between plaintiff's testimony and the medical evidence, the ALJ found that "the objective evidence does not establish that" plaintiff's symptoms of depression and anxiety "preclude her from engaging in all basic work activity as she has alleged." Tr. 27. This finding is supported by substantial evidence except as it relates to plaintiff's allegations of PTSD and related secondary symptoms.

As indicated above, plaintiff met with Dr. Schwartz more than forty times to receive treatment. *See* tr. 244–59, 320–346, 360–63, 404–409. During the course of this treatment, Dr. Schwartz regularly noted improvement in plaintiff's condition.[3] Dr. Schwartz also repeatedly

---

*reasonably be expected to* (not that it did in fact) produce some degree of symptom." *Smolen*, 80 F.3d at 1282 (citing *Cotton v. Bowen*, 799 F.2d 1403, 1407–408 (9th Cir. 1986)).

[3] *E.g.*, tr. 248 (On January 29, 2008, plaintiff reported "calming down considerably since last time." Dr. Schwartz noted that plaintiff's Major Depression was in partial remission and that plaintiff appeared "to be largely reconstituting with longer time on increased Cymbalta. . . a few nights of zolpidem. . . and possible role of initial session and brief work respite."); tr. 249 (On February 12, 2008, Dr. Schwartz noted that plaintiff's condition was "now closer to remission."); tr. 253 (On April 8, 2008, Dr. Schwartz noted that plaintiff's Major Depression was in

6 – OPINION AND ORDER

encouraged plaintiff to seek new employment opportunities. For example, on March 25, 2008, plaintiff continued to experience difficulties working in the collections department at Wilshire. At that time, Dr. Schwartz discussed the "possible advisability of time away from the office, with a goal of working on more self-soothing activities (as well as finding a different job) during the time away." Tr. 252; *see also* tr. 248 ("[S]he may also want to clarify her alternatives: given her skill set, she might have more options and might feel less 'trapped.'"); tr. 254 ("Her past experience in relevant offices, her facility with multiple computer systems and her bilingual skills all work in her favor . . . ."). By October 29, 2008, Dr. Schwartz formerly recommended that plaintiff "stay away from this job indefinitely"; noting that he thought "she would probably be reemployable elsewhere after time to recover and regroup . . . . I am reasonably hopeful that she will restabilize on current medication." Tr. 328. In a letter dated December 4, 2008, Dr. Schwartz further explained:

> As much as you value your employment as a source of self-respect and contribution to your family, in the face of your current relapsing Depressive and Post-traumatic intrusive symptoms, I recommend that you leave this work place indefinitely. I am hopeful that after a reasonable time to regroup and re-stabilize, you will be able to return to full employment with a new employer, given your strong work history and otherwise good response to treatment.

Tr. 331.

---

partial remission); tr. 254 (On April 22, 2008, Dr. Schwartz noted that plaintiff was "showing more benefit from medication."); tr. 256 (On May 20, 2008, Dr. Schwartz noted that plaintiff's trauma intrusions were "persisting but better contained with improved resilience and consolidation of self-esteem, improving affect regulation."); tr. 322 (On August 19, 2008, Dr. Schwartz noted that plaintiff was "recovering from relatively brief downturn around return-to-work pressures."); tr. 333 (On January 27, 2010, Dr. Schwartz noted that plaintiff's Major Depression was "in early/partial remission." At that time, plaintiff also reported that she was "feeling significantly better" on medication.); tr. 339 (On September 2, 2010, Dr. Schwartz noted that plaintiff's Major Depression was in remission, and that plaintiff had no active evidence of dissociative issues as trauma sequellae managed with good insight and improved affect regulation.); tr. 344 (On February 28, 2011, Dr. Schwartz noted that plaintiff's major depression was "more nearly resolved – but with more active trauma intrusions . . . though processed well today with insight."); tr. 404 (On May 23, 2011, Dr. Schwartz noted that plaintiff's major depression was "more nearly resolved."); tr. 406 (On June 20, 2011, Dr. Schwartz did not include Major Depression within plaintiff's assessment/plan.).

7 – OPINION AND ORDER

Plaintiff subsequently lost her job at Wilshire. *See* tr. 41, 181. In late 2010, faced with the expiration of her unemployment benefits, tr. 340, plaintiff obtained a "temporary job working in the monitoring/reporting side of a security camera company," tr. 341; *see also* tr. 159. Plaintiff was terminated "when the 'slow season' set in," but was informed that her employer "liked her work" and "would like to re-hire her if" a new major contract came through. Tr. 341.

On March 28, 2011, plaintiff reported that "she received feedback from at least one job that she came off as angry and defensive in [an] interview." Tr. 402. Dr. Schwartz opined that plaintiff is "[p]robably at competitive disadvantage in current tight job market, though an understanding employer might be able to value her work ethic." *Id.*; tr. 346 (same); tr. 404 (same).

On or about June 2011, plaintiff obtained another temporary job at a call center involving fraud checks on disposable cell phone customers. Tr. 159, 405. However, she "[h]ad to leave [this position] not long after [June 20, 2011] as frequently abusive callers got more obscene and threatening which increasingly triggered PTSD" symptoms. Tr. 406.

On or about August 2011, plaintiff obtained a part-time position busing tables at a local pizza restaurant. Tr. 159, 407. This position ended shortly afterward. Tr. 408. Dr. Schwartz reported that "bosses who don't tolerate questions are an issue." *Id.*

On October 10, 2011, plaintiff reported that she was considering appealing her social security ruling, "but would rather get this next Pizza hut job with interview later today." Tr. 409.

Agency consultant, Robert Henry, Ph.D considered most of these treatment notes in addition to other documentation submitted by plaintiff, and opined on June 8, 2011 that plaintiff had moderate limitations in social interaction, but was not otherwise limited. Tr. 67–68. Dr. Henry explained that plaintiff "should be limited in social interaction [with] general public"

8 – OPINION AND ORDER

because of her anxiety and depression symptoms. Tr. 68. Agency consultant, Joshua J. Boyd, Psy.D., considered additional treatment notes and affirmed Dr. Henry's opinion on September 12, 2010. Tr. 77–80. The ALJ assigned "significant weight" to the opinions of Drs. Henry and Boyd, *see* tr. 28, and formed an RFC consistent with both, *compare* tr. 26, *with* tr. 67–68.

This medical record, consistent with the ALJ's findings, reflects milder anxiety/depression symptoms that did not preclude employment. *See* tr. 66 (Dr. Henry concluded that the record "reflect[ed] abilities to function adequately in other realms as well as the capacity to engage in productive activity, as reflected on the MRFC.").

Second, as to inconsistency between plaintiff's observed behavior and the medical evidence, the ALJ noted "that the claimant was tearful throughout the hearing, which is in contrast to many assessments of the claimant's mood and affect while she was in treatment (Exhs. 1F, 2F, 5F, and 7F)." Tr. 28. This finding, at least as articulated, provides little basis to reject plaintiff's testimony.

In more than twenty treatment appointments, Dr. Schwartz reported that plaintiff exhibited varying levels of tearfulness. *See* tr. 244–255, 257–259, 320–21, 328–29, 333–35, 337, 340, 344–45, 404–406, 409; *see also* tr. 192, 282. As recently as March 28, 2011, plaintiff discussed her disability application with Dr. Schwartz and exhibited a more bitter mood, with an "affect more irritable with wide range . . . including *tearfulness* when trauma referenced." Tr. 345 (emphasis added); *see also* tr. 406 (On July 18, 2011, Dr. Schwartz noted that plaintiff's "mood troubled with tearful affect appropriate to traumatic content . . . ."). Moreover, the ALJ repeatedly asked plaintiff directly about subject matter that had previously led to tearfulness during treatment with Dr. Schwartz. *Compare* tr. 44 ("Q. Got it. Why did you stop [the call center position]?"), *with* tr. 406 ("Had to leave job not long after our last session as frequently

9 – OPINION AND ORDER

abusive callers got more obscene . . . which increasingly triggered PTSD . . . . [M]ood troubled with tearful affect . . . ."). As a result, this Court accords no weight to this proffered reason.

Third, as to inconsistency with plaintiff's daily activities, the ALJ found:

> [I]t appears that the claimant's inability to find a job has more to do with the economy than it does a disability (Exhs. 5F p.1 and 7F p.12). It also appears that the claimant was successful at a temporary job, and was only let go when the 'slow season' set in. (Exh. 7F p.1).

Tr. 28. The ALJ also discussed a function report submitted by Ms. Jones. *See* tr. 28; *see also* tr. 188–195. The ALJ concluded that "Ms. Jones's statement regarding the claimant's abilities generally supports the conclusion that the claimant is limited to the [RFC] outlined . . . ." Tr. 28.

An ALJ can rely on daily activities to form the basis of an adverse credibility determination if those activities contradict a plaintiff's testimony or involve the performance of physical functions that are transferable to a work setting. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). Defendant contends that plaintiff's activities contradict her testimony. Def.'s Br. 9, ECF No. 19. This Court looks to the record.

Plaintiff submitted a function report on May 24, 2011. *See* tr. 196–203. In that report, plaintiff indicated that her disability impacted her memory, concentration, understanding, and ability to get along with others. Tr. 201–202. Plaintiff also noted that her illness significantly limited her ability to work with co-workers or supervisors. *See* tr. 196 ("I do want to work but it has to be where I can be alone . . . ."); tr. 201 ("I see [authority figures] as people who take advantage of others."). During her administrative hearing, plaintiff testified that in a normal day, she "basically stay[s] in the house and stay[s] in [her] room and read[s], go[es] to therapy, and . . . shop[s]" for groceries. Tr. 52. Plaintiff also testified that if an employer rushed her, she would feel overwhelmed and may do or say things that she would not remember. Tr. 56–57.

10 – OPINION AND ORDER

These statements, to the extent that they reflect limitations greater than the RFC, are contradicted within the record. Plaintiff's daily activities appear more robust than alleged. Plaintiff cares for her sons, tr. 197; she prepares meals for herself and her sons on a daily basis; tr. 197; she performs light house work, e.g., laundry, miscellaneous cleaning, tr. 190, 197; she cleans her sister's house, tr. 50; she grooms her sister's dogs, tr. 50; she cares for her own dogs, tr. 197; she drives to the grocery store, tr. 52, 54; she attends church three times each week, tr. 192; she visits with her sister two to three times each week, tr. 188; she attends celebrate recovery each week, tr. 200; and she worked in three different temporary positions between late 2010 and August 2011, tr. 341, 405, 407. The ALJ, having considered this evidentiary record, reasonably found that many of plaintiff's statements were inconsistent and contradicted; thereby undermining her credibility. *Compare* tr. 201 ("I don't go see friends or family I like to stay alone I feel safe that way."), *with* tr. 188 (Ms. Jones indicated that she visited plaintiff "2 or 3 times a week."); *see also* tr. 341 (Plaintiff reported in January 2011 that her previous employer, a security camera company, "liked her work" and "would like to re-hire her" if the opportunity arose.).

The ALJ's reliance on the medical evidence and plaintiff's contradictory statements is sufficient to reject plaintiff's testimony regarding the severity of her symptoms except as it relates to plaintiff's allegations of PTSD and related secondary symptoms.

Plaintiff testified that she "might miss work more than two days [a month] because [she] get[s] migraines," which can last up to "five days." Tr. 55. As indicated *supra* § I, the medical record reflects at least three different instances of migraine treatment, including a diagnosis of Migraine NOS on June 30, 2009. *See* tr. 254, 272–76. The ALJ, in discussing plaintiff's credibility, failed to address plaintiff's allegations of PTSD and related secondary symptoms.

11 – OPINION AND ORDER

This failure, which constitutes an error, is discussed *infra* § V. *See Clute v. Astrue*, No. CV 10-6050-MO, 2011 WL 1626541, at *3 (D. Or. Apr. 28, 2011) (remanding for further proceedings where an ALJ failed to consider a claimant's allegations of migraine headaches).

### III. Dr. Schwartz's Opinion

Plaintiff contends that the ALJ erred in his consideration of Dr. Schwartz's treatment notes. *See* Pl.'s Br. 10–12, ECF No. 12. In response, defendant argues that the treatment notes at issue have little probative value, or, in the alternative, that any error committed was not harmful. Def.'s Br. 8–13, ECF No. 13.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995)). "If a treating or examining doctor's opinion is contracted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester*, 81 F.3d at 830–31). When evaluating conflicting medical opinions, an ALJ need not accept a brief, conclusory, or inadequately supported opinion. *Id.* (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)).

Plaintiff met with Dr. Schwartz more than forty times to receive mental health treatment. *See* tr. 244–59, 320–346, 360–63, 404–409. During the course of that treatment, Dr. Schwartz made multiple observations regarding plaintiff's ability to work. Plaintiff directs this Court's attention to specific observations made in late 2008. *See* Pl.'s Br. 10–12, ECF No. 12.

Between January and December 2008, plaintiff experienced gradually worsening symptoms related to ongoing stress at her position in the collections department at Wilshire. During this time period, Dr. Schwartz submitted multiple medical certification forms and clinical

12 – OPINION AND ORDER

assessment tool forms that included workplace recommendations. *See* tr. 347–359. For example, in a form dated January 21, 2008, Dr. Schwartz recommended that Wilshire "consider review of worker/supervisor relationship for personality mismatch in light of performance history." Tr. 347. Dr. Schwartz repeatedly recommended adjustments in supervisory intervention and interaction. *See* tr. 349 (clinical assessment tool dated April 8, 2008); tr. 351 (clinical assessment tool dated July 30, 2008); tr. 353 (clinical assessment tool dated October 15, 2008); tr. 355 (clinical assessment tool dated October 29, 2008). By late 2008, Dr. Schwartz opined that plaintiff's workplace had become so toxic that "it [would] take a change of workplace to recover [plaintiff's] old skills." Tr. 357. Dr. Schwartz recommended that plaintiff "not return to work." Tr. 359; *see also* tr. 328.

Plaintiff argues that specific treatment notes made during this period reflect permanent workplace limitations that were improperly rejected and should be credited, resulting in a disability finding. *See* Pl.'s Br. 11–12, ECF No. 12. This Court is not persuaded.

The ALJ discussed Dr. Schwartz's treatment notes at length. *See* tr. 27–28. As indicated *supra* § II, Dr. Schwartz opined multiple times in 2008 that he believed plaintiff would be employable with a new employer provided that she respond favorably to treatment. *See* tr. 328, 331. Plaintiff's condition regularly improved with treatment, *supra* note 3, and she subsequently held at least one position successfully, albeit temporarily, tr. 341. In 2011, Dr. Schwartz repeatedly opined that plaintiff was "[p]robably at a competitive disadvantage in current tight job market, though an understanding employer might be able to value her work ethic." Tr. 402. The ALJ concluded that Dr. Schwartz believed plaintiff was "capable of working" and that his treatment notes supported the RFC. Tr. 27–28. This interpretation is reasonable in light of the medical record, plaintiff's employment history, and plaintiff's daily activities. *See* tr. 77 ("The

13 – OPINION AND ORDER

combination of [plaintiff's] impairments is reasonably [compatible with] limited public contact only.").

Plaintiff also directs this Court's attention to multiple Global Assessment of Functioning (GAF)[4] scores noted by Dr. Schwartz in 2008. *See* tr. 350 (GAF 42); tr. 352 (GAF 47); tr. 354 (GAF 45). These scores are problematic for multiple reasons. First, a GAF score "does not have a direct correlation to the severity requirements in [the] mental disorders listing." Revised Medical Criteria for Evaluating Mental Disorders & Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50764–765 (Aug. 21, 2000); *see also Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013) ("It was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice."). Second, in each recorded GAF score, Dr. Schwartz noted that plaintiff's GAF score had declined from 65 in earlier 2008. A score of 65 reflects "some mild symptoms or some difficulty in social, occupation or school functioning . . . but generally functioning pretty well . . . ." *Diagnostic and Statistical Manual of Mental Disorders* 34 (rev. 4th ed. 2000). Thus, consistent with the plaintiff's treatment record, plaintiff's GAF score likely improved with her other symptoms. In any event, the ALJ adopted Dr. Henry's opinion, which explicitly considered plaintiff's GAF score. *See* tr. 65; *see also Bonk v. Astrue*, No. 3:11–CV–00637–BR, 2012 WL 5830392, at *11

---

[4] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n. 2 (9th Cir. 1998) (citing *Diagnostic and Statistical Manual of Mental Disorders* 20 (rev. 3d ed. 1987)). A GAF score includes two components: symptom severity and functioning. *See Diagnostic and Statistical Manual of Mental Disorders* 32 (rev. 4th ed. 2000). A GAF score between 41 and 50 "describes serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting)" and includes "any impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

(D. Or. Nov. 16, 2012) (noting that "an ALJ's failure to address specific GAF scores does not constitute legal error[.]" (citation omitted)).

Accordingly, the ALJ's interpretation of the treatment record as consistent with the RFC is reasonable and supported by substantial evidence, *see* tr. 67–68, 79–80.

## IV. Lay Witness Evidence

Plaintiff contends that the ALJ erred in his consideration of evidence submitted by Ms. Jones. *See* Pl.'s Br. 12–13, ECF No. 12. In response, defendant argues that the ALJ reasonably rejected Ms. Jones's opinion. Def.'s Br. 6–7, ECF No. 13.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted); *see also Merrill ex rel. Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members." (citation omitted)).

Ms. Jones submitted a function report on May 24, 2011. *See* tr. 188–195. In that report, Ms. Jones described plaintiff's daily activities, *see supra* § II, and indicated that plaintiff is unable to handle stress, changes in routine, and concentrate on written or verbal instruction because of her illness, *see* tr. 193–94.

The ALJ, having reviewed this evidence, found:

> The undersigned has reviewed and given full consideration to this report, and finds that Ms. Jones's statement regarding the claimant's abilities generally supports the conclusion that the claimant is limited to the [RFC] outline above. To the extent that Ms. Jones suggests that the claimant's impairments render her unable to work, the undersigned finds that Ms. Jones's close relationship with the claimant, and a desire to help her, likely influenced her opinion regarding the claimant.

15 – OPINION AND ORDER

Tr. 28. Plaintiff contends that this limited discussion is inadequate to properly reject many of Ms. Jones's specific statements. *See* Pl.'s Br. 13, ECF No. 12.

An ALJ may consider the relationship between a claimant and third-party when evaluating that claimant's credibility. *See Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). However, an ALJ may not simply rely on a relationship in the abstract to disregard lay evidence. *Cf. Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) ("[I]nsofar as the ALJ relied on characteristics common to all spouses, she ran afoul of our precedents."). In this case, the ALJ, absent any additional explanation, discounted Ms. Jones's function report because she is plaintiff's sister and desired to help plaintiff. As a result, these proffered reasons are not sufficiently germane. *See Ratto v. Sec., Dep't of Health & Human Servs.*, 839 F. Supp. 1415, 1429 (D. Or. 1993) ("If the desire or expectation of obtaining benefits were by itself sufficient to discredit a claimant's testimony, then no claimant (or their spouse, or friends, or family) would ever be found credible.").

Nevertheless, an error is harmless if it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). If, for example, "lay testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," then this Court may deem the ALJ's failure to articulate germane reasons harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012). Ms. Jones's description of plaintiff's limitations is generally similar to plaintiff's own statements. For example, both parties indicated that plaintiff had difficulty with authority figures, tr.192, 201; handling stress, tr. 193, 202; handling changes in routine, tr. 193, 202; and working with others,

16 – OPINION AND ORDER

tr. 195 ("She is not able to work with others."), tr. 196 (indicating that plaintiff could work but "it has to be where I can be alone and just stock shelves"). These proffered limitations, to the extent that they are inconsistent with the RFC, were properly rejected in the ALJ's consideration of plaintiff's own credibility. Thus, the ALJ's failure to comment upon these limitations was harmless. *See Molina*, 674 F.3d at 1122.

However, as indicated in *supra* § II, the ALJ did not address plaintiff's allegations of PTSD and related secondary symptoms. Ms. Jones, like plaintiff herself, reported that plaintiff had PTSD, tr. 188, and PTSD related migraines, tr. 192, 194. The ALJ's failure to discuss these limitations is not harmless. *See* tr. 39 (The VE testified "that if an individual were to miss two or more days per month and that that occurred on a chronic and a pattern basis, they just would not be able to sustain competitive work.").

## V. Remand

This Court has "discretion to remand a case either for additional evidence and findings or to award benefits." *Smolen*, 80 F.3d at 1292 (citing *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989)). Generally, the "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000) (citing *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)). However, evidence should be "credited and an immediate award of benefits directed" when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman*, 211 F.3d at 1178 (quoting *Smolen*, 80 F.3d at 1292).

17 – OPINION AND ORDER

The errors identified by this court—failure to identify and discuss plaintiff's alleged PTSD and related secondary symptoms—are reversible. Plaintiff's migraine allegations, if credited in their entirety, would likely preclude employment. *Compare* tr. 39, *with* tr. 55. However, in contrast to plaintiff's suggestion, this Court does not conclude that such an error is of the type that is remedied through a *Harman*-type award of benefits.

First, as to plaintiff's PTSD, that impairment need be recognized as severe under step two of the sequential evaluation. This Court, having reviewed the medical record, finds that the evidence establishes that plaintiff's PTSD is an abnormality that has "more than a minimal effect on [her] ability to work." *Webb*, 433 F.3d at 687 (citations omitted).

Second, as to PTSD related secondary symptoms, only plaintiff's migraine allegations approach the *Harman* threshold.[5] Plaintiff testified that she "might" miss more than two days of work each month because she gets migraines that last up to five days. Tr. 55. Plaintiff's sister, Ms. Jones, submitted a function report that alleged plaintiff had "more migraines" since her illness began. Tr. 192. Nonetheless, plaintiff must show that she has an impairment that could reasonably cause such limitations. *Smolen*, 80 F.3d at 1281 n. 1. The medical record establishes that plaintiff reported migraine headaches three times between 2008 and 2010. Tr. 254, 274, 333. Following each report, plaintiff's symptoms improved and/or she did not seek follow up treatment. *E.g.*, tr. 254 ("Her headaches and related somatic symptoms resolved within a few days."). Based upon this record, this Court declines to credit this evidence. *See Clute*, 2011 WL 1626541, at *7 (declining to credit evidence where plaintiff reported migraine headaches, but showed no instances of diagnosis or treatment).

---

[5] Plaintiff's alleged dissociative symptoms, even if credited, appear to have stopped completely in 2010. *See* tr. 339.

18 – OPINION AND ORDER

Accordingly, this matter is remanded under sentence four of 42 U.S.C. § 405(g) for further proceedings. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("'[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Immigration & Naturalization Serv. v. Ventura*, 537 U.S. 12, 16 (2002)).

## **CONCLUSION**

For these reasons, the Commissioner's final decision is REVERSED and this matter is REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings. It is hereby ordered, upon remand:

> **1.** The ALJ shall recognize plaintiff's PTSD as a severe impairment under step two of the sequential evaluation.
>
> **2.** The ALJ shall make new findings under step three of the sequential evaluation.
>
> **3.** The ALJ shall address plaintiff's allegations of migraine headache and dissociative symptoms, and lay witness Ms. Jones's associated statements.
>
> **4.** If necessary, the ALJ shall revise plaintiff's RFC to reflect additional PTSD related limitations.
>
> **5.** If, upon revision, plaintiff's RFC is more restrictive, the ALJ shall make new findings under step five of the sequential evaluation and obtain supplemental VE evidence.

IT IS SO ORDERED.

DATED this 23rd day of January, 2015.

_____
**Michael J. McShane**
**United States District Judge**